Schug, by guardian *ad litem*, Appellant, vs. The Chicago, Milwaukee & St. Paul Railway Company, Respondent.

*February 27 — April 4, 1899.*

*Railroads: Injury to boy trespassing on track: Contributory negligence: Gross negligence: Court and jury: License to use track as foot-way.*

1. Plaintiff, a bright, intelligent boy ten years of age, had, with two other boys, been running westward along a railroad track at a place where it was unlawful for them to be. Just before reaching

a street he attempted to cross the track and was struck by a loco-
motive coming from the east at an unlawful speed, the bell on
which had not been rung, though its whistle was sounded imme-
diately prior to the accident. The boy knew that it was danger-
ous to walk along or get upon the track, and had been cautioned
by his parents not to go around trains. He testified that although
he knew the train came along about that time he had not thought
of it until just before he was struck. It appeared that from the
street a man could be seen on the track nearly 1,100 feet to the
east; but there was no evidence that either of the boys was act-
ually on the track after the train approached where they could be
seen from the engine, or that the engineer or fireman saw any of
them, or that their clothing was such as naturally to attract at-
tention. In an action for the injuries sustained. *held*, that a non-
suit was properly granted. DODGE and WINSLOW, JJ., dissent,
being of the opinion that the question whether defendant's serv-
ants were guilty of gross negligence should have been submitted
to the jury.

2. The fact that a railroad track, at a place where it was protected by
fences and cattle-guards and where it was unlawful, under sec.
1811, R. S. 1878, for persons to walk, was frequently used by pedes-
trians does not show that such use was licensed by the company,
in the absence of evidence that it acquiesced in or invited the
trespass.

APPEAL from a judgment of the circuit court for Winne-
bago county: GEO. W. BURNELL, Circuit Judge. *Affirmed.*

For the appellant there were briefs by *Eaton & Weed* and
*Henry Fitzgibbon,* and oral argument by *H. I. Weed* and
*M. H. Eaton.* They contended, *inter alia*, that the plaintiff
by reason of his age could not, as a matter of law, be held
guilty of contributory negligence. *Ewen v. C. & N. W. R.
Co.* 38 Wis. 613; *Townley v. C., M. & St. P. R. Co.* 53 Wis.
626; *Hemmingway v. C., M. & St. P. R. Co.* 72 Wis. 42;
*Whalen v. C. & N. W. R. Co.* 75 Wis. 654; *Swift v. S. I. R.
T. R. Co.* 123 N. Y. 645; *Bottoms v. S. & R. R. Co.* 25 L. R.
A. 784, and cases in notes; *Johnson v. C. & N. W. R. Co.* 56
Wis. 274, 279; *S. C.* 49 Wis. 529, 531; *Heddles v. C. & N.
W. R. Co.* 74 Wis. 239; *McVoy v. Oakes,* 91 Wis. 214; *Car-
mer v. C., St. P., M. & O. R. Co.* 95 Wis. 513; *Mowrey v.*

*Central City Ry.* 51 N. Y. 666; *Byrne v. N. Y. C. & H. R. R. Co.* 83 N. Y. 620; *Dowling v. N. Y. C. & H. R. R. Co.* 90 N. Y. 670; *Hepfel v. St. P., M. & M. R. Co.* 49 Minn. 263; *Henderson v. St. P. & D. R. Co.* 52 Minn. 479. Even though the plaintiff had been upon the right of way instead of the street, the defendant's servants were bound to exercise reasonable care for his safety, and in neglecting to do so were guilty of gross and culpable negligence. *Valin v. M. & N. R. Co.* 82 Wis. 1; *Woodward v. West Side St. R. Co.* 71 Wis. 625; *Whalen v. C. & N. W. R. Co.* 75 Wis. 654. It is gross negligence to run trains at a rate of speed prohibited by law. It is a question for a jury whether children were guilty of contributory negligence in running in front of a train. *Chicago & A. R. Co. v. Becker,* 84 Ill. 483; *Allen v. A. C. R. Co.* 106 Iowa, 602.

For the respondent there was a brief by *Barbers & Beglinger,* attorneys, and *H. H. Field,* of counsel, and oral argument by *Burton Hanson.*

CASSODAY, C. J. This is an action for personal injuries sustained by the plaintiff, a boy of ten years of age, having his foot cut off by being struck by a passenger train of the defendant while he was on the track, May 29, 1897, between 10 and 11 o'clock in the forenoon. Issue being joined and trial had, the court, at the close of the testimony, granted a nonsuit, and from the judgment entered thereon the plaintiff brings this appeal.

The facts revealed upon the trial are to the effect that the defendant's railway ran from Menasha in an easterly direction to Hilbert Junction; that it crossed Konemac street, which ran north and south at right angles with the railway track; that that was the first street in Menasha crossed by the railway track coming from the east; that some 200 feet east of that crossing the track gradually began to curve towards the north, and continued to so curve for a distance

of 400 or 500 feet, after which it ran eastward in a straight line at an angle of fifteen or twenty degrees from the line of the track at the street crossing projected; that the defendant's right of way was 100 feet wide, and fenced on both sides; that there were cattle-guards on each side of the street, connected by wing fences on each side of the right of way; that there were no sidewalks on either side of that street; that there was a plank crossing near the middle of the street; that the defendant's depot was several blocks west of that street; that the one-mile station was nearly 1,900 feet easterly from the crossing; that within that distance were two whistling posts,— one about 1,150 feet easterly of the street, and the other a little over 200 feet easterly of the street; that the plaintiff lived with his parents four or five blocks south and west of the crossing, and had lived in Menasha from early childhood; that on the morning in question he left his home to go to the beach, about a mile east of the crossing, to get a pail of sand for his mother's birds; that two other boys — Rudolph Mayer, about the same age, and John Dryjewski, who was about a year older — went with him; that when they got to Konemac street they went down that street to the railway track, and then crossed over the cattle guards, and followed the railway track easterly for about a mile; that they fished, and he got his pail of sand; that they then started back home along the track; that when they got between the two whistling posts, and about by the curve mentioned, they thought of the ball game, and began to run; that the plaintiff ran ahead upon the ties on the north side of the track; that Rudolph ran upon the south side of the track; that John ran in the middle; that they ran nearly to Konemac street; that as they neared the street, and just as the plaintiff started to cross the cattle-guard, he looked around and saw Rudolph behind him on the north side of the track, and John still further back, but was off the ties, and running on the side of the track; that

he saw no train, and heard no whistle or bell; that in cross-ing the cattle-guard he stepped from one of the peaks to the other; that as soon as he got across the cattle-guard he started from the north side of the track to go to the south side of the track; that he so started to cross the track near the old cattle-guard; that just as he got in the middle of the main track, between the rails, Rudolph said the train was coming, and that, as the plaintiff was going to jump over the iron, his foot got caught under the rail, three or four feet from the cattle-guard, and he was struck by the train coming from the east; that he had two fish poles in his hand, one twenty feet long and the other shorter; that if he had not stumbled and fallen he would have gotten off the track before he was struck; that that was the time he lost his foot; that up to that time he had not thought about the train; that he knew the train came along about that time; that it was a nice, quiet day in the latter part of May, and that there was no noise by the wind or anything; that his father and mother had for years cautioned him not to go around trains, because he would be hurt; that he knew there was danger of being run over in getting on the railway track; that his parents did not know that he was going upon the railway track at the time in question; that he knew it was dangerous to walk on the track or the ends of the ties; that he knew the track was fenced in to keep people and animals out; that he had been to school ever since he was five years old; that he was in the sixth grade, and was studying Ger-man and arithmetic — fractions; that he had known for a good many years that if he was on the track, and a train came along, he was liable to get hurt, and, if he had seen or heard the train, he should have gotten off the track; that Rudolph testified to the effect that he heard three short whistles, and jumped off the track, and said, "Look out, *Willie!*" and the train struck him; that John testified to the effect that he heard some noise, and turned around, and saw

the train coming, and jumped off the track, and was going to holler, when he saw the plaintiff, who was in the act of crossing from the north to the south side of the track, thrown in the air; that the train started from Hilbert Junction on that day at 10:15 a. m., and was due at Menasha at 10:47 a. m., and was on time; that when the leaves were on the trees in the latter part of May a man could be seen from the center of Konemac street crossing on the track east at a distance of 1,092 feet, or about sixty-six rods; that the train at the time of the injury was running at the rate of thirty-five to forty miles per hour; that it did not stop until it was 1,323 feet past Konemac street; that three sharp whistles were sounded immediately prior to the accident; that the bell was not rung; that two witnesses on the part of the plaintiff testified that just prior to the three sharp whistles there was one long whistle; that a train equipped as that was, and running fifteen miles an hour, could be stopped in a distance of 100 feet, and running forty-five miles an hour could be stopped in a distance of 1,000 feet. Such is an outline of the evidence on which the nonsuit was granted.

No evidence was offered on behalf of the defendant. The accident occurred within the limits of Menasha, and hence the train was, at the time, running at an unlawful rate of speed. Stats. 1898, sec. 1809a. The statute also required the bell to be rung before and while crossing that street. Sec. 1809, R. S. 1878. But these statutes do not make the railway company absolutely liable for injuries to persons caused by trains running at an excessive rate of speed. *Schneider v. C., M. & St. P. R. Co.* 99 Wis. 378. On the contrary, such liability may be defeated by contributory negligence on the part of the person injured. *Id.* The portion of the track east of the street appears to have been protected by fences and cattle-guards, as required by the statute. R. S, 1878, sec. 1810. The statute made it unlawful "for any person, other than those connected with or

employed upon the railroad, to walk along the track" east of that street. Sec. 1811, R. S. 1878. The plaintiff and his two companions were walking along the track in violation of that statute. True, there is testimony tending to prove that during the fall and summer before the accident people went up and came down and out upon that track almost every day; but there is nothing in the testimony indicating that the defendant acquiesced in, much less invited, such trespass. It is unlike the habitual use by pedestrians of particular paths, walks, and drives at railway stations and on depot grounds and yards which are unfenced and open to the public, and where they may be readily observed by agents of the company. *Anderson v. C., St. P., M. & O. R. Co.* 87 Wis. 195, 205. In that case the plaintiff's intestate was killed while walking upon a bridge, constituting a part of the main track, at a considerable distance from the depot grounds, and it was held that the statute was applicable; that no license to use the trestle as a footway could be implied from its customary use by pedestrians for that purpose, especially as it was so built as to repel, rather than invite, foot travelers over it. Here the fences and cattle-guards were perpetual warnings against the use of such track by pedestrians. The same distinction has been maintained in later cases. *Mason v. C., St. P., M. & O. R. Co.* 89 Wis. 156, 157; *Carmer v. C., St. P., M. & O. R. Co.* 95 Wis. 517.

The same distinction has been maintained in other jurisdictions. Thus, in a recent case in Oregon it was held that: "The mere fact that persons have frequently trespassed upon a railroad track, and that the company has resorted to no means to stop such trespassers, does not amount to a permission or license to use the track as a foot-path. A railroad company owes to a trespasser upon its track no legal duty to keep a lookout or guard him against danger. The finding of the body of a child on a railroad track, where it had been struck by a train, raises no presumption of negligence

Schug vs. The Chicago, Milwaukee & St. Paul R. Co.

on the part of the company, although the track was straight and clear, where there is nothing to show the circumstances of the accident, or how long the child had been on the track when struck." *Ward v. S. P. Co.* 23 L. R. A. 715. Numerous cases are there cited from different states in support of such ruling. To the same effect is a recent case in Georgia, where the boy killed was eleven years of age. *Atlanta & C. A. L. R. Co. v. Gravitt,* 26 L. R. A. 553. So it has recently been held by the circuit court of appeals for this circuit, in an opinion written by Judge SEAMAN, sitting with Judges WOODS and SHOWALTER, that: "A railroad company is not bound to any act or service in anticipation of trespassers on its track, nor is the engineer obliged to look out for them; and a trespasser venturing upon the track for purposes of his own assumes all risk of conditions which may be found there, including the operation of engines and cars." *Sheehan v. St. P. & D. R. Co.* 76 Fed. Rep. 201.

It is apparent from the testimony in this case that the plaintiff was a very bright, intelligent boy, who admits that he knew when he went upon the track that he was not only disobeying the repeated injunctions of his parents, but that it was dangerous and wrong for him to be there. The allegation that he was lawfully traveling over and along the street when injured is expressly negatived by his own testimony. The cattle-guards were outside of the street, and confessedly he had not gotten into the street; much less was he a traveler upon the street. The complaint alleges that the plaintiff was injured "through the gross carelessness, negligence, and want of ordinary care and prudence of the defendant, its officers, agents, and employees, in carelessly and negligently and recklessly running and propelling the engine of the defendant attached to said passenger coaches, as aforesaid, through and over the street" in question, without giving any warning. The only evidence of gross carelessness and negligence, or of recklessly running and propelling

the engine over the street without warning, is the excessive rate of speed and the failure to ring the bell. There is no evidence that either of the boys was actually on the track after the train approached where they might have been seen by the engineer or fireman. True, they were running by the side of the track, but there is no evidence that the engineer or fireman saw any of them, nor that their clothing was such as naturally to attract attention. Gross negligence or carelessness is such a degree of rashness or wantonness as evinces a total disregard for the safety of persons or property, and is but little less than intentional wrong. *Lockwood v. Belle City St. R. Co.* 92 Wis. 108–112, and cases there cited; *Schilling v. C., M. & St. P. R. Co.* 71 Wis. 255. It is such a degree of recklessness or wantonness as would constitute some of the lower degrees of manslaughter in case death should result. Stats. 1898, secs. 4355–4363. Upon the evidence in the record no court, it is believed, would be justified in submitting to the jury the question whether the engineer or fireman was guilty of manslaughter, merely because they failed to see these boys by the side of the track, where they had no legal right to be, and hence where they were not expected to be. We find no error in the record.

*By the Court.*— The judgment of the circuit court is affirmed.


DODGE, J. I find myself unable to concur in the decision of the court in this case, or in a rule of law which exempts railroad companies so entirely from any duty to guard against injury to children in the operation of their dangerous apparatus. When three little boys are seen running along a railroad track a thousand feet ahead of an engine, it seems to me gross negligence for the engineer to drive his train at an excessive and unlawful rate of speed upon them, without signal and without check. It evinces to my mind that recklessness and wantonness which constitutes that degree of

negligence, whether or not there be intent or wilful purpose to injure. If it be urged that from the fact that the boys were running the engineer might infer that they knew of the approach of the train, it must have been obvious to him, from the slightest knowledge of boyish instincts and tendencies, that they were running to reach the street before the train overtook them, and he should have realized that they might not be able to accomplish that purpose. A very slight checking of the unlawful speed of this train would have saved them from the needless peril. If, however, he did not draw the inference that they knew of the approach of the train, then nothing could be more heedless and wanton than to allow them, without signal, to remain in ignorance while this peril was rushing upon them. I have assumed that the children were seen by the engineer, for they were in plain sight from the curve in the track, 1,092 feet away; and the known custom of close observation of the track ahead, supplemented by the absence of any denial from engineer or fireman, who could refute the fact if not true, would certainly support a verdict to that effect.

As no statements of mine can serve as a guide to the profession, I shall not incumber the reports with any extended discussion or citation of authorities. In *Stucke v. M. & M. R. Co.* 9 Wis. 212, the company was declared to be rendered liable by "wanton or needless damage," or "where the facts show such a degree of rashness or wantonness on the part of the servants of the company as evinces a total want of care for the safety of the cattle;" and it was held necessary to submit to the jury the question of gross negligence where the engineer drove his train upon cattle in plain sight, without either checking speed or sounding the whistle. That authority, I think, has never been questioned, and, such being the rule of this court as to the duty due to cattle trespassing upon the track, I am unwilling to relax it in case of children. I think the question whether defendant's servants

were guilty of gross negligence causing plaintiff's injury should have been submitted to the jury.

Winslow, J.   I concur in the foregoing opinion of Mr. Justice Dodge.