Watermolen vs. The Fox River Electric Railway & Power Co.

WATERMOLEN, Administrator, Appellant, vs. THE FOX RIVER ELECTRIC RAILWAY & POWER COMPANY, Respondent.

*March 23 — April 9, 1901.*

*Street railways: Negligence: Injuries to traveler: Court and jury: Contributory negligence: Comparative negligence: " Gross negligence."*

1. It appeared, among other things, that the driver of a wagon, who had plain view for a distance of 300 to 400 feet of an electric car approaching at a speed of from eight to twelve miles an hour, which was shown to be a usual rate of speed, when within 130 feet of the car, hurriedly attempted to cross in front thereof, and although the motorman immediately attempted to stop the car, a collision occurred.  *Held,* that the driver was guilty of contributory negligence as a matter of law.

2. While travelers on foot, by team, and by electric car may lawfully use the public highway, the purpose of expedition to be accomplished by the electric railway, and the character and weight of the vehicles necessary therefor, must result in deference from the foot traveler and the teamster to the electric car, and in an action to recover for an injury due to a collision the question is not whether the plaintiff had a right to be in the course of defendant's car, but whether he was negligent in being in that position.

3. The doctrine of supervening or comparative negligence has no place in the jurisprudence of Wisconsin.

4. The expression "gross negligence" as used by Wisconsin courts includes no degree of mere carelessness or inadvertence, however remote from the care customarily used by either the ordinarily careful man or by the exceptionally careless one, unless accompanied by intent, either actual or constructive, to cause the injury, or unless the conduct causing the injury evinces a total disregard

for the safety of persons or property, so as to be little less than in-
tentional wrong.

5. Where a motorman approaching a crossing with his car running at
a customary speed of from eight to twelve miles an hour sees a
driver of a wagon attempt to cross in front of his car when it is
within 130 feet of the wagon, and immediately applies the brakes
and attempts to stop the car, which is so nearly effected that the car
stops from four to ten feet after collision, he is not guilty of gross
negligence authorizing a recovery independent of the contributory
negligence of the driver.

APPEAL from a judgment of the circuit court for Brown
county: S. D. HASTINGS, JR., Circuit Judge. *Affirmed.*

On February 12, 1900, Frank Watermolen, plaintiff's in-
testate, twenty-one years of age, in full possession of all his
faculties, and of ordinary intelligence, was engaged in haul-
ing ice in the city of Green Bay. At the time in question he
was driving the last of three empty ice wagons westward on
the north side of Main street, a paved thoroughfare, in the
middle of which the defendant maintained a single railway
track. He was traveling from a considerable distance east-
ward towards a point where an opening had been made in
the sidewalk on the south side of the street, to pass there-
from down to the river to obtain ice. The street westward
from that point was in plain view for a distance of 300 or
400 feet. As the first team reached a point opposite this
break in the sidewalk, where it was customary for the ice
teams to enter, a car of the defendant was approaching, in
plain sight, somewhere about 300 feet to the westward, com-
ing towards them at a rate variously estimated from eight
to twelve miles an hour. The first driver turned and crossed
the track, followed closely by the driver of the second
wagon, during all of which time the approach of the car
had continued until it had reached a point estimated by dif-
ferent witnesses, with more or less certainty, all the way
from twenty feet to 130 feet west of the crossing point.
The decedent, with this car plain before his eyes, thereupon,

hurrying as much as possible, turned to the left to pass the crossing in front of it, which he failed to accomplish completely. The rear end of his ice wagon was struck by the car, and he thrown to the ground, and, either by the fall or by subsequent contact with his wagon as the horses sprung forward, was killed. It is undisputed that, as soon as the purpose to attempt the crossing became apparent, efforts to stop the car and prevent collision were made by the motorman, which were so nearly effective that the car stopped within a very few feet — four to ten — of the contact. Each of the wagon racks was sixteen feet long, and, with the horses, about twenty-seven feet long. The speed of the car is shown to have been usual and customary at the place in question. At the close of the evidence the trial court directed a verdict for the defendant on the ground of contributory negligence, upon which judgment for the defendant was entered, from which plaintiff appeals.

*John F. Watermolen*, for the appellant.

For the respondent there was a brief by *Greene, Fairchild, North & Parker*, and oral argument by *H. O. Fairchild*.

Dodge, J. The general facts of this case, to which are to be applied the rules of law governing the rights of the parties, are very simple, notwithstanding much conflict of evidence as to minor details, such as the distance away of the car when deceased attempted to make the crossing, its speed, and the exact place of the attempt. There is no dispute whatever that for a considerable time the car had been plain before the decedent's vision, and, whatever its exact location or speed, they were necessarily known to him. That location and speed were such that although he hastened his team to the utmost, and although the speed of the car, instead of increasing, was substantially diminished after he started to cross, collision in fact occurred. In other words, the conditions were such that he could not, without

haste, cross in safety, unless those conditions materially changed. With such knowledge decedent placed himself within the peril voluntarily and needlessly; for he was under no compulsion, by reason either of conduct of his team or of momentum, and could have stopped easily and without danger, at any moment before actually placing himself upon the track. That such conduct justifies no inference or conclusion other than negligence is now too firmly established to permit discussion, or warrant extended restatement of reasons. *Haetsch v. C. & N. W. R. Co.* 87 Wis. 304, 310; *Groesbeck v. C., M. & St. P. R. Co.* 93 Wis. 505; *Koester v. C. & N. W. R. Co.* 106 Wis. 460, 465; *Tesch v. Milwaukee E. R. & L. Co.* 108 Wis. 593. In a situation at all doubtful, the assumption of so serious a hazard upon the chances of the comparative speed of vehicle and train, when the alternative inconvenience of a brief delay is so slight, is not the part of ordinary care, and the event is at the traveler's own risk.

Various circumstances in this case enforce the conviction that plaintiff's intestate well understood that he was incurring an imminent peril, and that his chance was a doubtful if not desperate one. The witnesses who place the car at the greatest distance were the drivers of the two teams which preceded the deceased, and it appears that they deemed themselves in danger, and exerted themselves vehemently to " hustle " their teams across, although they had the advantage over him, the one of about sixty feet, and the other of about thirty. The first teamster locates the car about 270 or 280 feet away when he attempted to cross, and estimates its speed at twelve miles per hour, or four times the speed of the teams, which would advance the car some 240 feet while the two teams were covering the sixty feet necessary to carry them across the track, and bring it within thirty or forty feet of the point of collision when deceased attempted to cross. While these figures are only approxi-

mate, as are all the other estimates of speed and distance, they serve to show the well-nigh impossibility of this same witness's estimate that when deceased attempted the crossing the car was still half-way to a certain curve, or 130 feet distant, and tend strongly to confirm the estimate of all the other witnesses that when decedent's horses reached the track the car was only about twenty feet away. These considerations are, however, only makeweights. The simple situation first outlined justifies the conclusion of contributory negligence, and renders any other unwarranted. The trial court rightly exercised judicial function and authority in so deciding, and in withdrawing the question from the jury.

In appellant's brief we are favored with a discussion of the relative rights and rights of way of the teamster and the electric car upon a street. This subject has just been treated sufficiently in *Tesch v. Milwaukee E. R. & L. Co., supra.* There it was pointed out that travel on foot, by team, and by car are all lawful means of using the highway by the public for whom it exists; that the privilege of running at high rate of speed, on fixed tracks, cars of much size, of which the momentum is not easily controlled, is accorded owners thereof, not for their own private benefit, but to meet the needs of large numbers of the public, each of whom has the same right to consideration as has he who would pass on foot or in his own vehicle; and that from the very purpose of expedition to be accomplished, and the character and weight of the vehicles necessary thereto, must result deference from the foot passenger or the teamster to the electric street car. That discussion is, however, wholly irrelevant to the question whether the conduct of plaintiff's intestate precludes recovery. That question must be answered from considerations of due care, and not of mere right. One may be entirely within his strict rights when placing himself within the peril of another's negligence, and yet be so clearly

negligent in so doing that he cannot recover. Wrong or negligence can make its perpetrator liable only for such damages as could not be avoided by due care of the injured party. A traveler on a sidewalk, who knowingly and needlessly walks into the peril of a wall which, by negligence of the owner, is tottering to its fall, may be wholly within his right, while the owner's conduct is wrongful, and yet be so clearly guilty of contributory negligence that he must suffer the result without remedy. The question is not whether the deceased had a right to be in the course of defendant's car, but whether he was negligent. *Brown v. C. & N. W. R. Co.* 109 Wis. 384.

2. The finding of contributory negligence relieves us from the necessity of considering whether any mere negligence is proved against the defendant. It renders proper a verdict for defendant, even though its motorman may have been guilty of some want of ordinary care, and that, too, even after discovering danger of collision; for the doctrine of supervening or comparative negligence has no place in our jurisprudence. *Johnson v. Superior R. T. R. Co.* 91 Wis. 233; *Tesch v. Milwaukee E. R. & L. Co.* 108 Wis. 593. It is, however, urged that the evidence tends to disclose *gross* negligence on the part of the motorman, and that, under numerous decisions of this and other courts, liability results therefrom notwithstanding contributory negligence. That such rule has often been announced by this court, though less often found applicable, is beyond question; but its statement is extremely misleading, unless the meaning of " gross negligence," as used by this court, is fully understood and carefully distinguished from its meaning in those courts which recognize the doctrine of comparative negligence, and the efficacy of a higher degree of mere negligence in defendant to overcome the effect of plaintiff's negligence of less degree. The exact significance of the expression " gross negligence " in this court has recently been defined in several carefully con-

Watermolen vs. The Fox River Electric Railway & Power Co.

·sidered cases.  *Lockwood v. Belle City St. R. Co.* 92 Wis. 97;
*Schug v. C., M. & St. P. R. Co.* 102 Wis. 515; *Bolin v. C., St.
P., M. & O. R. Co.* 108 Wis. 333.   From those decisions it is
·obvious that no degree of mere carelessness or inadvertence,
however remote from the care customarily used either by
the ordinarily careful man or by the exceptionally careless
·one, constitutes gross negligence with us, unless accompanied
by what in the *Bolin Case* is described as intent, either
actual or constructive, to cause injury, or, as the same idea
is phrased in the *Schug Case*, unless the conduct " evinces a
total disregard for the safety of persons or property, and is
but little less than intentional wrong."   Of such conduct the
record before us presents no intimation.   The only direct
·evidence of the motorman's management of his car after dis-
covery of peril to the deceased is that of himself and of An-
derson, the only passenger, who both testify, as witnesses
for the plaintiff, that immediately deceased drove onto the
track the brake was put in operation, and efforts made to
·stop the car, which were so nearly effective that it did come
to a complete stop within a very few feet after the collision,
and had so nearly stopped before that the half-inch strips
·of which the vestibule was built were hardly at all broken,
and the glass forming its upper part not at all.   Of course,
the motorman might, consistently with even ordinary care,
·assume that a teamster would not drive onto the track in a
position of peril until a purpose to do so was rendered ap-
·parent.   *Cawley v. La Crosse City R. Co.* 106 Wis. 239, 242;
*Tesch v. Milwaukee E. R. & L. Co.* 108 Wis. 593.   So far as
·appears, deceased might have stopped his horses the moment
before they reached the tracks, and the motorman might
well have expected it.   The practice of stopping teams at
this point for cars to pass was not unusual, as testified by
the other teamster.   The conduct of the motorman, as soon
as the peril became apparent, does not justify any infer-
·ence either of intent to collide with decedent's wagon, or of

total disregard for the latter's safety, "but little less than intentional wrong."

Under rules of law now too firmly established to permit reconsideration, we must hold that the trial court rightly decided that no recovery by plaintiff was warranted by the evidence, though accorded the most favorable construction and the utmost reasonable inferences in his behalf, and therefore properly directed verdict for defendant.

*By the Court.*— Judgment affirmed.