BARLOW, Administratrix, Appellant, vs. FOSTER, Respondent.

*April 25—May 14, 1912.*

(1–5, 13) *Appeal: Review: Questions of fact: Verdict when sustained: Harmless errors.* (6–11) *Automobiles: Gross negligence: Unlawful speed: Instructions to jury.* (8, 12) *Special verdict: Questions submitted: Omissions: Waiver.* (14, 15) *Jury: Control by court: Urging agreement: Time kept out: Comforts to be provided.*

1. Where there is a fair doubt as to whether a verdict is contrary to the evidence, the fact that the trial court approved it is of controlling weight.
2. A verdict approved by the trial court which has any credible evidence to support it will not be disturbed on appeal.
3. Where there is any room for putting probability on one side against probability on the other, it cannot be said that a verdict is without any evidence to support it.
4. Responsibility for the correct determination of questions of fact in legal actions rests upon the trial court and jury, not upon the supreme court.
5. Where evidence offered on rebuttal is not of new matter, but merely to explain or make more clear evidence previously given, the trial court has a very broad discretion as to its admission.
6. In an action for death of plaintiff's intestate, alleged to have been caused by defendant's wanton and reckless driving of his automobile in which the deceased was riding, by reason of which the car ran into a ditch and was overturned, evidence tending

to show, among other things, that the car, which had been running about eighteen miles an hour, in the nighttime, met a buggy on a narrow turnpiked road and was forced to pass it on the left side; that the rear wheels of the car skidded to the left, and when defendant attempted to keep it from going into the ditch on that side and to get it back into the center of the road it skidded to the right and went into the right-hand ditch, is *held* to sustain findings by the jury, approved by the trial court, to the effect that the defendant was not running the car at an unlawful rate of speed as he approached the place in question, and that he did not run it rashly, recklessly, or wantonly, and in disregard of the safety of others.

7. Instructions to the jury, with reference to the question whether the car approached the place at an unlawful speed, distinguishing between that period of time and a subsequent period, and stating that evidence as to a sudden speeding up of the car in the effort to keep it from skidding into the left-hand ditch had nothing to do with the question then under consideration, did not invade the province of the jury and were correct.

8. The jury having acquitted defendant of running the car at an unlawful speed and of all the essentials of gross negligence, the question of proximate cause is immaterial and its submission to the jury not prejudicial.

9. An instruction as to the meaning of the word "wilfully" in a question submitted to the jury, which was correct as far as it went but did not define the term as specifically as it might, was not prejudicially erroneous, in the absence of any request for more specific definition.

10. Instructions, quoted in the opinion, as to the words "rashly, recklessly, or wantonly," are *held* to have correctly stated the law as to the meaning of these terms when used to characterize gross negligence.

11. The mere running of the car at unlawful speed in such a case would be ordinary negligence, and would constitute gross negligence only when coupled with such wanton and reckless disregard of human safety as to evince intent, actual or constructive, to injure.

12. Where no request was made to submit any question not embodied in the special verdict the losing party cannot, on appeal, complain that the material issues were not covered.

13. On appeal to this court, no error will be deemed prejudicial or material unless it affirmatively appears that, had it not occurred, the result might probably have been materially more favorable to the party complaining.

14. The trial judge may properly admonish a jury of the importance, from a public as well as a private standpoint, of using their very best endeavors to agree upon a verdict, making it clear that no effort is being made to coerce any one to surrender his deliberate, honest judgment.

15. Although, after having deliberated some twenty-nine hours, the jury reported that in their opinion an agreement was impossible, and although no conveniences were provided for their rest at night, there was no error in this case in keeping them out more than forty hours,—the issue submitted being simple, fully explained by the trial court, and depending upon evidence of such character that there was little, if any, excuse for such long delay in reaching an agreement, and the jury not having requested to be discharged nor having made any complaint of sickness, exhaustion, or discomfort.

APPEAL from a judgment of the circuit court for Winnebago county: CHESTER A. FOWLER, Judge. *Affirmed.*

Action to recover damages sustained, by the statutory claimants in such cases, for the alleged negligent killing of plaintiff's intestate.

The theory of plaintiff is that defendant, in the nighttime of October 13, 1910, while operating his automobile and having the intestate, by invitation, as a companion, drove along a turnpiked country road between the city of Omro and city of Oshkosh,—well knowing the condition thereof, including all dangers to be avoided, particularly those caused by bridges, culverts, turnpikes, ditches, crossroads, inequalities of the roadbed, and liability to meet travelers on foot, horseback, or with vehicles; and that on account of its being so misty and dark as to render it difficult or impossible to see objects ahead in time to guard against interference, it was perilous to travel at an excessive rate of speed,—in a wanton and reckless manner, utterly regardless of the safety of the intestate; and while so doing met a horse attached to a wagon being driven along the highway, under such circumstances, in view of such wantonness and recklessness, that he could not see the horse in time to control his machine as the necessities of the situation required and which he knew was liable to occur; whereby such

machine plunged into a side ditch, onto the rails and ties of an. interurban track laid on the highway, and was overturned and wrecked, falling upon, crushing, and so injuring the intestate that he died in consequence thereof. The claim of defendant is that, notwithstanding the intestate was riding with defendant as claimed, and was killed by the overturning and wrecking of the automobile, he was so riding, accompanied by two others, at his request and for his accommodation; that the machine was not being driven at an excessive rate of speed nor in a dangerous or wanton manner; that the conditions were such that defendant could and did see the horse ahead in time to avoid danger on account thereof, so far as concerned any fault of his; that he observed the horse a considerable distance ahead standing still, or nearly so, on the south side of the way and intended to pass on the right or south side in the proper and lawful way; that in the exercise of due care he anticipated the person in charge of the horse would move over to the north and proper side of the way, as it was his duty to do, and handled the machine accordingly till it became apparent such person would persist in compelling him to pass on the left; that he then made the proper movement therefor and when opposite the vehicle the machine suddenly skidded upon the grass, where he was compelled to go under the circumstances, causing it to go into the ditch, against the railroad ties in the roadbed, and overturn, injuring the intestate so that he died in consequence thereof without any negligence on defendant's part causing or contributing thereto; that the machine was being operated wholly for accommodation of the intestate and that he rode where he could observe all conditions as well as defendant.

All matters precedent to the right to maintain the action were pleaded and established, leaving as controverted, the allegations as to gross negligence in handling the machine and the recoverable damages, in case of liability being established.

There was evidence tending to prove the following: On the

occasion in question defendant was out with his machine for the accommodation of deceased. They were old acquaintances and had been intimate friends from boyhood. There were two other persons along who were taken at the request of deceased. The machine approached the place of the accident quite late at night. The road was about sixteen feet wide with an interurban railway track on the south side. It ran east and west and was crossed by another road near the particular place. The traveled track was on a turnpike with quite a ditch on either side. It was dark and somewhat misty. There were efficient headlights lighting the way for some 150 feet ahead. Defendant was experienced in running the machine and believed himself competent to handle it under all conditions liable to arise. During the period immediately preceding a few seconds before the accident, he was going some eighteen miles per hour, more or less. Suddenly he saw a single horse and vehicle in charge of a driver, about 150 feet in advance, coming toward him and somewhat on the south of defendant's right-hand side of the road. That was the side on which defendant was entitled to the right of way. The driver saw defendant coming but neglected to turn to his right as he should have done. The latter did not, at once, check the speed of his machine, supposing the man would turn on the proper side of the road. He persisted in keeping on the wrong side. When defendant was within fifty or seventy-five feet of him, he saw he would be compelled to take the left-hand side in order to pass. He then checked the machine, threw out his clutch, and swerved to the left. At the rate he was going he could have come to a full stop in less than forty-five feet. He succeeded in passing the rig; but, in doing so, was compelled to swerve so to the left that the hind wheel on that side struck the grass, at or near the brink of the ditch, and commenced to rapidly skid so as to carry the back end of the machine into it. Thereupon, he let in the clutch, put on power, and tried to right the machine around into the center

of the road. It instantly jumped forward and pointed diagonally toward the opposite side. Before he could stop or turn, it skidded to the right, struck the ties of the railroad track, went into the right-hand ditch, and turned over, injuring deceased so as to cause his death. Defendant used the appliances for controlling the machine so as to point it down the road and avoid the danger but it skidded so he lost control of it to the extent that he could not avoid what happened. Neither he, nor, so far as appears, any of his companions, apprehended serious danger till it was too late. No one of such companions, so far as appears, protested in any way, respecting the speed of the machine or the manner in which it was handled. There was conflict respecting the speed of the machine and the particular circumstances of the accident, but no evidence indicating but that all occupants of the auto were in harmony as regards the manner it was operated; and no evidence tending to show defendant had any thought of injuring any one or but that he was safely conveying his companions.

The cause was submitted to the jury, resulting in these findings in substance: Defendant was not running the machine at an unlawful rate of speed as he approached the place where the injury occurred. Running the car at an unlawful rate of speed was not the proximate cause of Barlow's death. Defendant did not run the machine rashly, recklessly, or wantonly and in disregard of the safety of others. The car was run at the rate of eighteen miles per hour as it approached the crossing near the place of the injury. Several exceptions to rulings, before and after verdict, were saved in plaintiff's behalf. Adverse to her, the court approved of the findings of the jury and ordered judgment thereon, which was accordingly entered and plaintiff appealed.

For the appellant there was a brief by *P. H. Martin,* of counsel, and *Gruenewald, Jackson & Gruenewald,* attorneys, and oral argument by *Mr. Martin.*

For the respondent there was a brief by *Weed & Hollister,* and oral argument by *H. I. Weed.*

MARSHALL, J.   Thus the alleged cause of action was for injuring deceased with actual or constructive intent to do so, resulting in his death.   The gist of the matter was submitted to the jury in the question as to whether defendant ran the car wilfully and rashly, recklessly or wantonly, and in total disregard of the safety of others.   In short, as to whether he committed the very serious wrong,—widely distinguishable from one resting in mere want of ordinary care,—of actual or constructive intent to injure.   The court thus early characterized that degree of negligence which is not defendable by ordinary negligence of the injured person, and has, with slight lapses, adhered to it to this day.   *Potter v. C. & N. W. R. Co.* 21 Wis. 372; *Randall v. Northwestern Tel. Co.* 54 Wis. 140, 11 N. W. 419; *Lockwood v. Belle City St. R. Co.* 92 Wis. 97, 65 N. W. 866; *Schug v. C., M. & St. P. R. Co.* 102 Wis. 515, 78 N. W. 1090; *Bolin v. C., St. P., M. & O. R. Co.* 108 Wis. 333, 84 N. W. 446; *Watermolen v. Fox River E. R. & P. Co.* 110 Wis. 153, 85 N. W. 663.

Court and counsel appreciated the nature of the issue, fully, as evidenced by the question particularly referred to, which is in harmony with all others submitted to the jury.   The subject is thus referred to for the purpose of bringing, into clear view, the test to which the evidence must be subjected in considering the claim that the verdict is contrary to the evidence, which is the first matter, and, really, the most significant one presented for decision.

In considering such first matter, we must not only take note of the precise issue between the parties, but the fact that the trial court deliberately considered the evidence before judgment and approved the verdict.   This latter circumstance is of great and often controlling weight,—always controlling in

case of fair doubt. We must also keep in significant view the rule that, the verdict of a jury cannot, properly, be disturbed on appeal, merely because of its appearing to be against the clear weight of the evidence, or because, if we were to pass upon the matter as seen in the printed record, we might find differently than the jury did.

If the verdict has any credible evidence to support it,—any which the jury could in reason have believed, leaving all mere conflicting evidence, evidence short of matter of common knowledge, conceded or unquestionably established facts and physical situations,—it is proof against attack on appeal, and that must be applied so strictly, on account of the superior advantages of court and jury for weighing the evidence, that the judgment of the latter approved by the former is due to prevail, unless it appears so radically wrong as to have no reasonable probabilities in its favor after giving legitimate effect to the presumption in its favor and the makeweights reasonably presumed to have been rightly afforded below which do not appear, and could not be made to appear, of record.

From the viewpoints suggested, the evidence has been carefully examined and considered, aided by counsel's careful analysis of it, in the printed as well as upon the oral argument, without discovering any fair ground for saying there is no legitimate basis for the verdict.

In the very nature of things, as indicated by what has been said, the cause cannot be retried here, as to facts, from an original viewpoint. An appellate court does not possess efficient facilities for doing that; hence, the dignity which is and must, in justice, be accorded to the approved verdict of a jury.

It is a waste of time and private and public resources to proceed with expectation that this court can and will weigh mere probabilities against probabilities and strike a balance. The law does not permit it. It would be as liable to promote the cause of wrong as of right to attempt it. It would invade the function of the trial court to do so. Upon it rests a very

high degree of responsibility for discovering the truth from human evidence. Such court will best fully appreciate that by holding firmly to the doctrine that it cannot be relieved of the responsibility indicated, and giving due weight to its decision. The efficiency of our judicial system may be increased by greater appreciation that, as to facts of a controversy of a legal nature, so long as there is room for any discretion in the matter, the trial court, with its jury of sworn triers, is substantially supreme. Greater appreciation that the responsibility, substantially irrelievably, rests there and of the dignity which this court will accord to initial decisions will stimulate greater efficiency in that field,—greater care in responding to the situation. As a rule, the trial jurisdiction, as to facts in a legal action, is the sole reliance. The exceptions are few, where the evidence below is viewed in the light of correct rules of law.

This somewhat lengthy statement of the situation which counsel for appellant have to face in this case, seems justified by the proposition upon which the argument that the verdict is contrary to the evidence is based. It is stated thus in the brief: "The verdict is against the weight of evidence and is perverse." The alleged element of perversity seems to substantially drop out in the argument, leaving the element that the verdict is contrary to the weight of evidence, as the only one treated so as to challenge attention. True, on the oral argument the proposition was given the cast of, the verdict is entirely unsupported by the evidence; but, that seems to have been based on the thought that plaintiff's theory is so strongly established that the contrary evidence is not worthy of belief. That will not do, so long as evidence on the one side is not wholly discredited by matter of common knowledge, conceded facts, or established physical situations. If there is any room left for putting probability on one side against probability on the other, it cannot be said the verdict is without any evidence to support it.

In view of the conclusion to which we have come, the above general statement of principles and conditions will furnish as good a basis therefor, and a better precedent for future guidance, than any analytical discussion of the evidence. As a rule, on the mere question of whether the verdict has any sound basis in the evidence, such discussion does not seem to be required or be advisable, and is often hardly excusable. The assurance, in such a case, that the evidence has been carefully examined in all its aspects, and a statement of the result reached, must, ordinarily, suffice. It seems very clear here that there is, at the very best for appellant, a conflict as regards the speed of the machine and very little or no evidence to warrant finding actual or constructive intent to injure.

On the examination of Sheppard, the man with the horse, evidence was elicited, tending, from one viewpoint, to show that the machine came toward him from a considerable distance back at a very moderate rate of speed. He was called, on behalf of appellant, on rebuttal and questioned to show that he observed the machine when so far away that it must have approached at great speed to reach him by the time he traversed the space between where he first noticed it and where it passed him. The questions were objected to as not proper rebuttal and were ruled out. The witness had, in fact, testified very fully as regards the matter, giving supposed distances and physical situations. The jury were permitted to take a view, so they must have had a pretty accurate understanding of where the witness was when the headlight of the machine showed up and where he was at the time of meeting. The court thought that, in view of the facility the jury had for understanding the evidence and reconciling any conflicting statements made by Sheppard, further explanations by him were unnecessary.

When evidence is offered on rebuttal, which is merely explanatory, or to make more clear evidence previously given, not of new matter,—the trial court has a very broad discre-

tion whether to admit it or not. Not every offer in rebuttal is, strictly speaking, of rebutting evidence. It is often a mere effort of the party to reopen his case, or explain evidence already given, rather than to produce new matter. Any relaxation of the correct rule of practice, which is often advisable, to permit such evidence, is addressed, solely, to the sound discretion of the court. But the dividing line between what is and what is not strictly rebutting evidence, is so shadowy and the discretion of the trial court in the field where evidence may be treated as rebuttal, though not strictly so, so broad that cases are few where the decision below can be successfully challenged on appeal. This is not one of the exceptions.

The trial court put the rulings mentioned upon the ground that the witness had once gone over the whole matter and the jury were possessed of ample facilities for reconciling any contradictions and rejecting any wrong statement. The reason was legitimate and the situation warranted its application. Moreover, it is quite plain that appellant was not prejudiced, because the jury must have rejected the view, which counsel sought by the so-called rebutting evidence to meet, in reaching the conclusion that the machine was running at the rate of eighteen miles per hour in approaching the vicinity of the crossing near where Sheppard was traveling from the time he first saw the machine till it reached him. Counsel concede that, according to the permissible view below which he sought to eliminate, the machine was traveling at the rate of not more than about seven or eight miles per hour; showing that such view was not adopted by the jury. Furthermore, manifestly, appellant was not prejudiced, in any event, because of the substantial absence of evidence to raise respondent's conduct, if negligence, to the grade of constructive intent to injure, involved in a mental condition of constructive utter disregard of the safety of others.

Several complaints respecting instructions given, may well be treated briefly.

The court said to the jury: "There is evidence tending to prove that after the defendant saw the horse he increased the speed of the car . . . to keep it from skidding into the north ditch, but this evidence of speed has nothing whatever to do with this question," referring to the question of whether the car was running at an unlawful rate of speed as it approached the highway crossing west of the place of injury. The language complained of seems quite free from fair criticism. The existence and nature of the evidence was correctly stated. It related to a time subsequent to that covered by the question. The province of the jury was not invaded in the slightest particular.

The court further instructed the jury, in connection with the foregoing:

"This increase could only have had a bearing upon the degree of skill exercised after the defendant saw the horse, and that is a question in no way involved in or connected with the one we are considering."

That seems strictly accurate when one comprehends just what the court was talking about. The question covered a period preceding the event of speeding up to avoid going into the north ditch and to straighten the car around in the road, if that occurred, as respondent testified. The instruction was given to guard against confusing the two intervals of time. We see no ground for just criticism. The court made no attempt to instruct that there was a sudden speeding up of the car immediately preceding the accident. The fact was stated, and properly so, that there was evidence on the question, but that if there were such speeding up, it was not within the period covered by the question, which was strictly true.

Further criticism is made of submitting the subject of proximate cause to the jury at all, on account of the character of the case and the evidence. There might be some merit in that, if there was any reason to suppose appellant was prejudiced. The jury having acquitted respondent of running the car at

an unlawful rate of speed, and of all the essentials of gross negligence, the element of proximate cause from any fair viewpoint which could be taken of the matter, is immaterial.

The court, in effect, instructed the jury as to the word "wilfully"—used in the question as to whether respondent was guilty of gross negligence,—that it signifies intentionally or with knowledge, though not necessarily with express intent or purpose. It is said the court erred in not using the words "actual intent" instead of "express intent" and explaining that constructive intent, or intent imputable from the circumstances of the case, is sufficient. The gist of that is, really, that the instruction is right as far as it goes, but might have been phrased so as to have better informed the jury on the point covered by the question to which the language referred. If counsel wanted the words "wilfully" and "wantonly" more specifically defined, they should have made a request in respect to the matter. The charge, as given, is free from error, especially of a prejudicial character.

Further instructions were given in respect to the subject of what constitutes "wilfulness" or "wantonness," which, in the whole, conveyed the correct idea with commendable clearness. It does not seem necessary to quote all of them and discuss counsel's complaints with reference thereto. They were phrased in very familiar language,—evidently copied, substantially, from opinions of this court. We will refer specifically to but one more of the instructions complained of.

Respecting the meaning of the phrase "rashly, recklessly, or wantonly," used in the question as to the alleged degree of respondent's fault, the court said:

"Taking the phrase 'rashly, recklessly, or wantonly' as a whole it means something more than mere inadvertence or inattentiveness or want of ordinary care; it means an indifference to obvious consequences; an indifference to the rights of others; indifference as to whether an injury to another be done or not;"

concluding with this general explanatory statement:

"The wrongful conduct . . . must indicate such disregard. of consequences as to evince little short of actual intent to inflict injury, . . . willingness to perpetrate injury or a purpose to take known chances of perpetrating an injury, and they must constitute the equivalent, so far as turpitude and consequences are concerned, of actual intent and willingness. to perpetrate injury."

This court has thus stated the law, as to the meaning of the terms used to characterize gross negligence, over and over again. *Schug v. C., M. & St. P. R. Co.* 102 Wis. 515, 78 N. W. 1090; *Bolin v. C., St. P., M. & O. R. Co.* 108 Wis. 333, 84 N. W. 446; *Watermolen v. Fox River E. R. & P. Co.* 110 Wis. 153, 85 N. W. 663. In the first case cited the late chief justice, speaking for the court, used this language:

"Gross negligence or carelessness is such degree of rashness or wantonness as evinces a total disregard of the safety of persons or property, and is but little less than intentional wrong. It is such a degree of recklessness or wantonness as would constitute some of the lower degrees of manslaughter in case death should result."

That states the matter quite as strongly as the trial court did in the instruction complained of. It seems quite likely the instructions and verdict were phrased with reference to the language used in the *Schug Case* and others of similar character.

Further complaint is made because the court coupled the element of unlawful rate of speed with that of gross negligence, instead of separating the two so the jury could pass on the latter, though they found no unlawful speed. The case in that respect was submitted in harmony with the claim of appellant in the complaint and down to the end of the trial. No request was made to submit any question not embodied in the verdict. So there is no room for complaint that material issues were not covered. If there be such, they must be regarded as waived·by appellant or found against him by the trial court, by force of the statute, ch. 346, Laws of 1907

(sec. 2858m, Stats.), and the practice thereunder. But it seems the whole claim of appellant was fairly submitted. A mere running of the car at unlawful speed would be ordinary negligence, only. Such speed coupled with such wanton and reckless disregard of human safety as to evince intent, actual or constructive, to injure, was the plaintiff's claim, pleaded, tried, submitted, and passed upon.

Some other complaints respecting instructions will be passed without further notice than to give assurance that all have been considered, and to suggest that, notwithstanding the dignity which able counsel for appellant accords to them, we are constrained to say, that, in our view, they do not merit more than this general mention.

Serious fault is found respecting the length of time the jury were kept out in securing a verdict and the circumstance of interference of two circuit judges in the matter, including one against whom an affidavit of prejudice had been filed, rendering the calling in of the judge who presided at the trial, necessary, and undue publicity as to the jury's deliberations. It may be there was too much publicity under the judge temporarily left in charge and that, possibly, he slightly exceeded his authority. But it seems that counsel agreed that he might relieve Judge FOWLER, who presided at the trial, in the main, to the extent which he did, and that no objection was made before verdict. Furthermore, it does not affirmatively appear that appellant was prejudiced in any way.

The mischief of disturbing decisions upon the ground of mere presumption of prejudice from the happening of error, so far as it ever had any place in our jurisdiction, has been thoroughly eradicated by a full return to the letter and spirit of the Code,—voiced in sec. 2829, Stats. (1898), with some legislative assistance which, in the judgment of the writer, was unnecessary,—that no error is prejudicially material unless it appears probable,—appears in an evidentiary way, circumstantially or otherwise, that, had it not happened the result might probably have been materially more favorable to

the adverse party. *Burns v. State,* 145 Wis. 373, 383, 128 N. W. 987.

Very serious criticism is made because the jury were kept out somewhere about forty hours before a verdict was reached, having reported, in the meantime, and after having deliberated some twenty-nine hours, that, in their opinion, an agreement was impossible and had been admonished in pretty vigorous language that they were to decide, not fail to decide; that unless a jury agreed upon a controversy submitted to them the administration of justice would fail; that there was no way of reaching a conclusion except by the verdict of a jury.

"I see no reason," said the court, "why you gentlemen are not just as competent, just as able, just as likely to decide the case, and decide it right, as the next jury that would be called upon the case would be. . . .

"Now I do not want you to understand by what I say that you are going to be made to agree or you are going to be kept out until you do agree, that is not the idea, but I do want you to understand it is your duty and you must make an honest and sincere effort to arrive at a verdict. Jurors should not be obstinate; they should be open-minded; they should listen to the arguments of others and talk matters over fully and fairly and freely and make an honest effort, as fair-minded men, to come to a conclusion."

The circumstance of the long deliberation, the report, many hours before the end, that an agreement seemed impossible, the fact that no conveniences were provided for rest at night-time, and some others which we will omit to detail, are relied upon to support the claim that the result finally reached was the product of coercion and not of judgment.

For counter circumstances it appears that, the controlling issue submitted was very simple; it was fully explained by the court and depended upon evidence of such character that there was little, if any excuse, for such long delay in reaching an agreement and less for leaving the controversy for another jury to deal with. The trial judge had to face the whole situation and do what he considered justice demanded in the

particular circumstances.   There is no set rule for such mat-
ters.   Under some circumstances it might not be fair treat-
ment of a jury to keep them out twenty-four hours, and in
another, it might almost be an abuse of discretion to discharge
them till after the lapse of a much longer time.   The judge
must be master of the situation, restrained only by the bound-
aries of a very broad discretion.   He must not only be left
within the limitation suggested as master of the situation, but
efficient administration is promoted by masterful judicial con-
trol of it, always paying careful attention to the comfort and
health of the jury.   He has great power in such field and duty
to use it firmly but discreetly.

We may say, in passing, that a trial court might well make
provision for jurors, in such circumstances as existed here, to
have opportunity to sleep, and do so comfortably and in
healthful surroundings.   A jury well taken care of by the ju-
dicial administrator,—so taken care of as to be impressed with
the idea that everything is being done which is reasonably
within the power of the judge to do to enable them to give
their best thought to the matter in hand to the end that a just
conclusion may be reached if possible, will, it is believed, in
general, partake of the spirit of the judge in that regard and
co-operate to their utmost in finally terminating the contro-
versy submitted to them.   The old method of subjecting jurors
to more or less hardship in case of delay in arriving at a ver-
dict, may well be substantially done away with,—done away
with to the extent of seeing that they have meals furnished
seasonably and amply to their satisfaction, have opportunity
to partake thereof in comfort, and opportunity to sleep a rea-
sonable portion of time and in reasonable comfort as to some-
thing suitable to rest upon, and in such surroundings as to
reasonably promote rest.   To what extent all this can be done
must necessarily depend upon circumstances.

In this case we do not discover anything to indicate that the
jury were conscious of being coerced.   The indications are
that they, with considerable enthusiasm, remained at the work.

Though they reported improbability of agreeing, they did not at any time request to be discharged or object to being sent back to further consider the case after having come into court or being called in. No complaint was made of sickness or exhaustion or discomfort. The indications are rather that the jurors, in general, were of the opinion that an agreement should be reached and that they preferred not to separate without concluding the matter.

As regards admonitions to the jury, they were well within the administrative authority of the judge. A trial judge may properly admonish a jury of the importance, from a public as well as a private standpoint, of using their very best endeavors to arrive at a harmonious conclusion based on judgment. To awaken or strengthen their appreciation of duty, they may well be admonished, substantially, as the trial judge did here,—the idea being kept prominent, as it was, that no effort was being made to coerce any one to surrender his deliberate honest judgment, but only to secure the best possible consideration of the matter in hand the jury are capable of. The trial judge here was well guarded in his remarks. No person intelligent enough to make a good juror would be liable to decide otherwise than according to his judgment on the evidence by reason of such admonitions, while such might well be called back thereby to the performance of duty after having, in strenuous controversies or otherwise, wandered therefrom, or stimulated to still greater efforts in the line of duty. On the whole, we cannot perceive any error in the court's remarks and no error of a prejudicial character in respect to the jury after they were sent out with the case. Of course, we cannot approve of some publicity there was as to the state of deliberations in the jury room. It were better to preserve the secrecy of such room according to time-honored practice.

*By the Court.*—The judgment is affirmed.