SCHLECT, Plaintiff in error, vs. THE STATE, Defendant in error.

*December 13, 1889 — January 7, 1890.*

*Criminal law: Manslaughter in fourth degree.*

On a trial for murder it appeared that the deceased and others who were unfriendly to the defendant called at his saloon; that the defendant stepped behind the bar and asked them what they wanted; that they made no reply, except that the deceased and one of the others applied opprobrious epithets to the defendant, who then started for the deceased, and they clinched; that the deceased got his arm around the defendant's neck, and beat him in the face or on the head with the fist of the other hand; that after struggling in this position for a while the defendant pulled his revolver from his breast pocket, held it close to the deceased, and, without taking aim, fired the fatal shot; and that the defendant had no enmity against any of the crowd, and did not arm himself for this occasion. The defendant claimed that when he shot he was strangled and nearly insensible. *Held,* that these facts warranted a conviction of manslaughter in the fourth degree, under sec. 4362, R. S.

ERROR to the Circuit Court for *Marathon* County.

The facts are stated in the opinion.

For the plaintiff in error there was a brief by *Brown &*

*Pradt*, attorneys, and *Geo. W. Cate* and *Silverthorn, Hurley, Ryan & Jones*, of counsel, and the cause was argued orally by *Neal Brown*.

The *Attorney General* and *L. K. Luse*, Assistant Attorney General, for the defendant in error.

ORTON, J. The plaintiff in error was tried upon an information for murder in the first degree, and convicted of manslaughter in the fourth degree. The only point made for a reversal of the judgment is that the evidence did not warrant the jury in finding the defendant guilty of manslaughter in the fourth degree. The facts are substantially as follows: The defendant was the keeper of a saloon in the city of Wausau in this state, in connection with his hotel. The saloon or bar was connected with another room by an archway; and, in the afternoon of Christmas day of the year 1887, he had been sitting, with several friends, at a table in said room. The deceased and several boon companions hired a team, and made the rounds of the saloons in the city, picking up others as they drove along. They stopped and drank at each saloon that bought beer of Louis Ruder, one of the company, who was a brewer, and who had an ill feeling towards the defendant because he did not buy his beer of him; and Louis Butler, the deceased, had quarreled with the defendant on account of some garnishee suit, and had threatened to get even with the defendant, applying to him an opprobrious epithet. Williams, another of that company, was unfriendly with the defendant. The company grew noisy and turbulent as they went the rounds of the city, and at one place drove on the sidewalk, and were cautioned by the police. They drove from that place directly to the hotel of the defendant. Williams was delegated to go in and call the defendant to come out and see the crowd. He came and looked out of the door, and then shut the door and went back into said room. Williams

made some remark, and the defendant said, "That will do," or "That's enough." The crowd seemed offended at their reception, and talked of it as they drove away. They then put out their team, and agreed that they would go to the defendant's saloon and call him to an account for not giving them liquor, or for his treatment of them when they called before. They all went into the hotel by the barroom door. The defendant went into his bar, and asked them what they wanted. They made no reply, only Williams applied to the defendant some opprobrious epithet, and so did the deceased. The defendant then started for the deceased, and they clinched; and the deceased got his arm around the neck of the defendant, or got his head in chancery, as sportsmen say, and beat him in the face or on the head with the fist of his other hand. In the struggle they got into the room adjoining the bar-room, by the deceased pushing the defendant, or the defendant pulling the deceased in trying to get away. While struggling in this position a short time, the defendant pulled out his revolver from his breast pocket, held it close to the deceased, as he had to, and fired the fatal shot. The defendant had no enmity against any of the crowd, and he claimed that when he shot he was strangled and nearly insensible. There was some testimony that the defendant struck the first blow, but this was disputed. There may be some slight circumstances not here noticed, but the above is believed to be the material evidence. The defendant did not arm himself for this occasion.

Manslaughter in the fourth degree is defined in our statute (sec. 4362, R. S.) as "the involuntary killing of another by any weapon, or by any means, neither cruel or unusual, in the heat of passion, in any cases other than such as are herein declared to be justifiable or excusable homicides." There are three ingredients of the offense, which, concurring, are supposed to distinguish this one from any other

criminal homicide. They are: (1) Involuntary; (2) a weapon neither cruel or unusual; and (3) the heat of passion.

1. We think it very evident that the killing was not intentional or voluntary. The defendant, no doubt, intended to shoot; but he had no chance to take aim. There is no evidence that he either intended to kill or supposed he would kill. The killing was accidental. The presumption is that in using such a weapon he intended to take life. In this case, however, the circumstances rebut such a presumption. The shooting was voluntary, but the killing was involuntary.

2. What is a *cruel* weapon, we need not define. If a pistol is a cruel weapon, then any weapon that is most likely to take life, or commonly used to take life, is a cruel one, and all weapons are cruel. It must be some other than such a common weapon that can be distinguished as cruel. It is a usual weapon, or not unusual. This is evident.

3. We may well presume that the killing was in the heat of passion. He was struggling vainly to get his head loose from such provoking confinement, and save himself from blows in the face. If he was not angry and in the very heat of passion, it was a miracle. It would seem that the facts bring this case directly within this degree of homicide.

The case of *People v. Crowe*, 2 Edm. Sel. Cas. 156, cited by the attorney general, seems to be in point. Under the very highest and worst provocation, the wilful disturbance of his dying daughter, the defendant followed the deceased into the street, and shot him with a gun, killing him instantly. It was ruled that he might be convicted of manslaughter in the fourth degree. *Keenan v. State*, 8 Wis. 132, is in many respects like this, and the weapon used was a knife; and the conviction was for manslaughter in the fourth degree. The ruling of the circuit court that the offense came within that degree of homicide was approved.

*By the Court.*— The judgment of the circuit court is affirmed.