DOHERTY, Plaintiff in error, vs. THE STATE, Defendant in error.

*December 13, 1892 — January 10, 1893.*

*Criminal law: Intent to kill: Presumption: Person resisting arrest: Degrees of manslaughter.*

1. One who points a revolver to a vital part of the body of another and fires, with the intention, at least, of disabling the latter, will be presumed to have intended the natural and ordinary consequences of his act, and hence will be held to have intended to kill. He cannot, therefore, be convicted of manslaughter in the fourth degree under sec. 4362, R. S., since under that section the killing must be involuntary.

Doherty vs. The State.

2. Where an officer kills a person whom he is attempting to arrest under legal process and who is resisting such arrest, he is guilty of no crime unless such killing was unnecessary. If unnecessary, he is guilty of manslaughter in the second degree under sec. 4351, R. S. He cannot, therefore, be convicted of manslaughter in the fourth degree under sec. 4363, since cases of manslaughter in any other degree are expressly excluded from that section.

ERROR to the Circuit Court for *Fond du Lac* County.

An information was filed in the circuit court for Fond du Lac county against the plaintiff in error, charging him with the crime of manslaughter, in that he, the said *Michael Doherty*, "did on the 3d day of January, A. D. 1891, at the city of Fond du Lac, in said county, wilfully and feloniously kill and slay one Michael Cahill, against the peace and dignity of the state of Wisconsin."

The plaintiff in error was tried upon such information, and the jury returned a verdict of guilty of manslaughter in the fourth degree. The court overruled motions in arrest of judgment and for a new trial, and gave judgment that the accused pay a fine of $500, and that he be imprisoned in the common jail of Fond du Lac county until such fine be paid, but not to exceed six months. The court also granted a stay of proceedings pending the decision of this court, the case having been brought here by writ of error. The facts are stated in the opinion.

*Maurice McKenna*, for the plaintiff in error.

For the defendant in error there was a brief by the *Attorney General* and *J. M. Clancey*, Assistant Attorney General, and oral argument by *Mr. Clancey*.

LYON, C. J. On January 3, 1891, the plaintiff in error, *Michael Doherty*, who was a duly elected and legally qualified policeman of the city of Fond du Lac, having all the powers and authority of a constable to serve civil process, received from a justice of the peace for service a valid civil warrant for the arrest of Michael Cahill. Having had

trouble with Cahill when attempting to arrest him on a former occasion, and having been informed that Cahill had made threats of violence against him in case he should attempt to arrest him again, *Doherty* armed himself with a .38-caliber, self-cocking, loaded revolver, one chamber of which, as he testified, contained a blank cartridge, the other four chambers being loaded with powder and ball, and proceeded to find Cahill. He found him in the saloon of one Yers, sitting upon a stool. He laid his hand on Cahill's shoulder, and told him he had a warrant for his arrest. Cahill slipped off the stool, and resisted the arrest, by struggling with *Doherty* and pushing him away. He then attempted to escape through a back door of the saloon, and, while moving towards the door, *Doherty* discharged one chamber of his revolver towards Cahill. *Doherty* testified that it was the chamber loaded with the blank cartridge, which he prepared in that way in order to frighten Cahill, should he resist arrest or attempt to escape. Cahill went to the back door through a hall, and then turned upon *Doherty*, who was advancing towards him; and the two men met, and had a severe struggle in the hall, during which *Doherty* fired a second chamber of his revolver at Cahill, the bullet passing through a partition on the side of the hall. All parties agree that this shot did not strike Cahill. The men continued the struggle. *Doherty* fell to the floor, and Cahill on top of him. The testimony for the defense tends to show that while in this position *Doherty* reached upward, held his revolver pointed at Cahill's back, and fired the same, with the intention of disabling him. It is disputed that any third shot was fired. When the struggle was over, Cahill had a bullet wound in his back, which caused his death a few hours later.

The theory of the state is that the first shot produced the wound which caused the death of Cahill. Cahill made a dying declaration, in which he stated that *Doherty* shot

him when he got to the back door and took hold of it. The district attorney stipulated of record that there is no evidence to support this statement. The stipulation was advisedly made; for all the other testimony, and all the reasonable probabilities of the case, show quite conclusively that the first shot was fired before Cahill reached the door.

The theory and claim of the defense are that a third shot was fired, as above stated, and that it was the fatal shot.

The circuit judge instructed the jury, in substance, that the evidence warranted a conviction of manslaughter in the fourth degree. The error assigned on this instruction is the only one we find it necessary to consider in the case. That degree of manslaughter is thus defined in the Revised Statutes: "Sec. 4362. The involuntary killing of another, by any weapon or by any means, neither cruel or unusual, in the heat of passion, in any cases other than such as are herein declared to be justifiable or excusable homicide, shall be deemed manslaughter in the fourth degree. Sec. 4363. Every other killing of a human being by the act, procurement, or culpable negligence of another, when such killing is not justifiable or excusable, or is not declared in this chapter murder or manslaughter of some other degree, shall be deemed manslaughter in the fourth degree." The question to be determined is whether the testimony in the case is sufficient to support a conviction under either of those sections.

It has already been stated that no one claims that Cahill was wounded by the second shot. The testimony is very convincing that, had he been wounded by the first shot, he could not have participated in the severe struggle which he had with *Doherty* after that shot was fired. Indeed, the reasonable probabilities against the theory of the state are so strong that, in disposing of the motions in arrest of judgment and for a new trial, the learned circuit judge said: "If the sole ground of conviction rests upon the

theory of the state that the first shot was the one which caused the death of Michael Cahill, I should say that the verdict was so against the evidence that it ought to be set aside." A perusal of the evidence leaves the same conviction on our minds. We hold, therefore, that the testimony fails to prove that Cahill was wounded by either the first or second shots fired by *Doherty*. It necessarily follows that there must have been a third shot fired, as testified to by *Doherty*, and that it was the fatal shot.

Such being the case, the evidence is conclusive that the killing of Cahill was not involuntary, for *Doherty* pointed his revolver to a vital part of Cahill's body, and fired the same, with the intention, at least, of disabling him; and, on the principle that a man is presumed to intend the natural and ordinary consequences of his act, he fired the shot with the intention to kill Cahill. In order to sustain a conviction for manslaughter in the fourth degree, under sec. 4362, the killing must be involuntary. It is impossible, therefore, to sustain this conviction under that section. A conviction of that degree of manslaughter, under sec. 4363, cannot be upheld if it appears in proof that the accused is guilty of some other degree of the crime. It is conclusively proved that, when Cahill was shot, he was engaged in resisting service upon him of legal process by an officer legally authorized to make such service. He was therefore attempting to commit an unlawful act, and *Doherty* shot him while resisting such attempt. In doing so, *Doherty* was guilty of no crime unless he shot Cahill unnecessarily. If he shot him unnecessarily, *Doherty* was guilty of manslaughter in the second degree, under sec. 4351, R. S., which provides that "any person who shall unnecessarily kill another while resisting an attempt by such other person to commit any felony or to do any other unlawful act, or after such attempt shall have failed, shall be deemed guilty of manslaughter in the second degree." Such being

the fact, there can be no lawful conviction of *Doherty* of manslaughter in the fourth degree, under sec. 4363; for .cases of manslaughter in any other degree are expressly excluded from that section.

*By the Court.*— The judgment of the circuit court. is reversed, and the cause remanded for a new trial.