SHARP, Administrator, Appellant, vs. MILWAUKEE ELEC-TRIC RAILWAY & LIGHT COMPANY and another, Respondents.

*January 10—March 14, 1922.*

*Railroads: Automobile stalled on grade crossing: Negligence: Special verdict: Inconsistency: Inadequate damages.*

1. The deceased had driven his automobile onto the track of the defendant interurban railway at a country grade crossing, where for some unexplained reason the automobile stopped and an approaching interurban car struck it. The evidence as to the period of time that the automobile remained station-

ary on the track being in conflict, it is *held* that a special verdict to the effect that the deceased was not negligent and that the motorman could not have seen the automobile on the track in time to have avoided a collision was not inconsistent, as the questions were for the jury, which was not bound to accept the statements of plaintiff's witnesses as to the time the car was stalled, and there was no evidence that the motorman was guilty of gross negligence.

2. A special verdict of $4,000 financial loss to a widow for the death of her husband, while lower than ordinarily found in such cases, is not so inadequate as to indicate that the jury were prejudiced in favor of defendant.

APPEAL from a judgment of the circuit court for Milwaukee county: JOHN J. GREGORY, Circuit Judge. *Affirmed.*

One Albert E. Sharp was killed October 25, 1917, when the automobile which he was driving was struck by the interurban car of defendant at a farm crossing leading off to the west from the concrete highway of the Chicago road in the town of Oak Creek, Milwaukee county, about two and one-half miles south of South Milwaukee and fourteen miles north of Racine.

Suit was brought by his administrator on behalf of the widow for the financial loss to her by reason of such death and also on behalf of the estate for the injuries to the automobile.

Two causes of action were alleged: one based upon a claim of want of ordinary care on the part of the defendant resulting in the injuries, such alleged negligence being in substance a failure to maintain a safe and suitable plank crossing at the place of the accident as required by the ordinance of the town board; permitting the crossing and approach thereto to be in a muddy and unsafe condition, causing the automobile to become stalled just prior to the collision; operating the street car at a high rate of speed; failure by the defendant's employees to keep a proper lookout; and failure to apply the brakes or otherwise stop the car in time to avoid the accident.

The second cause was based upon allegations of gross negligence in that the defendant's motorman, in reckless disregard of the safety of the occupants of the automobile, continued to operate the street car at a high and dangerous rate of speed.

Damages were claimed as to the financial injury to the widow to the amount of $10,000, and $1,500 for the injury to the automobile.

Defendant's answer put in issue the material allegations of the complaint. The special verdict as submitted and answered was in effect as follows:

(1) The automobile became stalled on the track.

(2) "Ought the motorman in charge of defendant's street car, by the exercise of ordinary care, to have discovered the position of the automobile on the street-car track in time to have avoided a collision with it? *A*. No."

(3) (Not answered.)

(4) There was no want of ordinary care on the part of Mr. Sharp.

(5) Damages: To automobile, $375; to the widow, $4,000.

After motions by the parties the court directed the entry of a judgment dismissing the action on its merits and with costs in favor of the defendant. From the judgment entered in accordance therewith the plaintiff appealed.

For the appellant there was a brief by *Glicksman, Gold & Corrigan* and *W. J. McElroy,* all of Milwaukee, and oral argument by *Walter D. Corrigan.*

For the respondents there was a brief by *Van Dyke, Shaw, Muskat & Van Dyke* of Milwaukee, and oral argument by *Carl Muskat.*

ESCHWEILER, J. The accident happened early in the afternoon of a clear day. The deceased and his wife had driven from Milwaukee and desired to go to a farmer's house on the west side of the interurban track of defendant. They had difficulty in locating the farm and had driven by

it twice, and made the last inquiry concerning it at what was known as the Ryan Road, about 1,365 feet north of the particular crossing. According to Mrs. Sharp's testimony they drove slowly south from the Ryan road, and when they came to this driveway she turned to look north and also south and no street car was in sight in either direction; the automobile then turned to the west, and when the rear part was still on the street-car tracks it was stalled for about a minute before the crash came, during which time her husband was shifting gears, and that she first saw the car when it was on the curve about two blocks to the south. A man who was driving his team from the south and just a short distance from the crossing at the time of the accident also testified, on plaintiff's behalf, that the automobile was stopped a half a minute or so while the driver was doing something with the gear shifts.

Defendant's motorman testified that the street car had stopped about 1,536 feet south of this point of collision at the Fitzsimmons road, and it then proceeded to the north until, at a point some 500 feet south of the particular crossing, he first saw the automobile approaching him from the north along the Chicago road, the concrete surface of which was about seven feet east of the street-car track.

He testified further that when he was about fifty to sixty feet south of the crossing in question the automobile turned from the concrete highway to the west to go in to the farm and that he immediately applied his brakes in an effort to stop, but was unable to do so in time, and that while the automobile was still in motion and had almost cleared the track the collision occurred, the automobile being turned almost squarely around and left on the side of the track, the street car proceeding about 300 feet further to the north before coming to a stop. His testimony that there was no stopping of the automobile on the track crossing and that it first turned in toward the west when the street car was about sixty feet to the south was supported by the testimony of

the conductor, who claims to have seen it while looking forward from the rear of the car, and by that of a passenger who was in the front end of the car.

It is urged on this appeal by the plaintiff that there should have been submitted on the issue of ordinary negligence questions as to whether the crossing was negligently maintained by defendant in violation of the town ordinance as to the requirements for such country crossings, and that there were errors in the charge of the court to the jury and in his rulings on the evidence, and further that the question of gross negligence should have been submitted to the jury.

By their answer to the first question of the special verdict the jury found that the automobile was stalled on the track prior to the collision. Such finding, therefore, was in accord with the testimony of Mrs. Sharp and the plaintiff's other witness. Such finding necessarily disregarded the testimony of the three witnesses for the defendant on that point, who were each positive that the automobile did not stop on its passage over the street-car track.

They also found by their answer to the fourth question that there was no want of ordinary care proximately contributing to the collision on the part of Mr. Sharp, the driver of the automobile.

By their answer to the second question, however, they found that in the exercise of ordinary care the defendant's motorman could not have discovered the position of the automobile on the street-car track in time to have avoided the collision.

Upon such verdict, in connection with the facts in the case, it is very strenuously argued on behalf of plaintiff that the verdict as rendered is inconsistent on its face and therefore could not support a judgment for the defendant, and that the new trial asked for by plaintiff should have been granted. This on the theory that Mr. Sharp, having been found to have exercised ordinary care and therefore not having been at fault, and that the automobile as a matter of

fact was stalled from some unexplained cause and station-
ary on the street-car track for at least some appreciable
time before the collision, the further finding that there was
no negligence on the part of the motorman, the only other
human agency that could be responsible for the collision,
was necessarily inconsistent with the other findings or indi-
cated the probability that the jury acquitted the motorman
of ordinary negligence because they must have believed him
to have acted with gross negligence.

If the jury, having found that plaintiff's version, to the
effect that the automobile did come to a stop while crossing
the track, was true, were bound to accept the testimony of
Mrs. Sharp or the other witness for plaintiff as to the length
of time the automobile was so stalled, namely, from a half
a minute to a minute or more, then the position taken by
plaintiff on this appeal would undoubtedly be correct; for if
the automobile was in fact stalled for half a minute, the
street car, then going at the rate of thirty miles an hour, must
necessarily have been more than a thousand feet to the south
of the place of collision where the automobile stopped. That
then, it being conceded that the crossing was directly in
front of and in plain sight of the motorman for at least 800
feet, and it further appearing from the undisputed testimony
that the street car could be, because it was, stopped in about
300 feet from the point of applying the brakes, the motor-
man with the automobile in sight while going such distance
of 800 feet must evidently have failed to use ordinary care
in not stopping the car.    Furthermore, such a situation
would have made an issue for the jury as to whether there
was not a wilful disregard by the motorman of the evident
danger to the stalled automobile, which might have prop-
erly been found by the jury to amount to gross negligence
had such question been submitted to them as requested.

The difficulty here, however, is that it was entirely a
question for the judgment and discretion of the jury, after
consideration of the evidence, to arrive at a reasonably

probable conclusion as to the real state of facts, although in so doing they would necessarily have to accept in part only as well as discredit in some particulars the testimony of the witnesses on both sides.

Estimates as to the precise length of time the automobile was stationary on the track are necessarily quite uncertain when considered in connection with all the facts and circumstances. For instance, Mrs. Sharp testified that it took them about three minutes to drive from the Ryan crossing, 1,365 feet north of the place of accident, and that they were driving slowly; yet if they had been going no more than ten miles per hour they would have covered that distance in less than two minutes, and at fifteen miles an hour it would have taken about one minute. The testimony of the other witness for the plaintiff as to the distance he traveled with his team during the time he first saw the automobile approaching this crossing up to the time of the collision, also afforded ground for a conclusion that he might have been mistaken in his estimate. Again, the fact that no effort was made by Mrs. Sharp or her husband to escape from the automobile or no outcry made, either or both of which might naturally have happened had there been any appreciable length of time of delay in crossing, would also afford ground for the jury to believe that, though the automobile did actually stop, yet it was but momentary, and therefore warrant if not require them to find as they did, that there was no failure of ordinary care on the part of the motorman just before the collision. There being such a possible reconciliation between the several answers in the special verdict, we cannot say that the trial court erred in refusing to grant a new trial on the grounds so urged.

No explanation is made by plaintiff's evidence why the automobile became stalled on the crossing. For the jury to have ascribed the stalling of the automobile to defendant's failure to comply with the ordinance of the town board would have been, under this record, mere speculation, and

therefore the trial court properly refused to submit any such question to the jury.

Upon the view above stated that we have been forced to take as to the effect to be given to the answers made by the jury in the special verdict, we can see no grounds upon which it can be maintained that the trial court erred in failure to submit the proposed question as to any gross negligence by the motorman in the management of the car. The only theory upon which such question could be submitted would be that the testimony disclosed not merely a lack of observation on the part of the motorman, but that he did actually see, for some appreciable length of time before the collision, an evident situation of danger, and wantonly, not merely carelessly, disregarded his obligation to avert the same. Upon this record we cannot say that the court erred in refusing to submit such question.

It is further suggested by plaintiff that the $4,000 found by the jury as the financial loss to the widow from the death of her husband were so inadequate as to indicate that the jury were prejudiced in their verdict and therefore it should be deemed to have affected their answers to the questions which were found against plaintiff. Although the damages are, under the facts in this case, lower than those usually found by jurors in somewhat similar situations, yet we cannot say that they are so excessively low as to require us to say that the trial court erred in the discretion vested in him upon the whole situation in upholding the verdict as he did.

The disposition thus made of the main questions presented makes it unnecessary to discuss the other assignments of error as to the instructions to the jury or the rulings upon the evidence, for were there errors in any such matters we would not deem them prejudicial or sufficient to require a reversal of the judgment.

*By the Court.*—Judgment affirmed.