THE STATE, Appellant, vs. WHATLEY, Respondent.

*October 14, 1932—January 10, 1933.*

158

For the appellant there were briefs by *Thomas H. Ryan* of Appleton, special prosecutor, *Stanley A. Staidl,* district attorney of Outagamie county, the *Attorney General,* and *J. E. Messerschmidt,* assistant attorney general, and oral argument by *Mr. Staidl* and *Mr. Ryan.*

For the respondent there were briefs by *Benton, Bosser & Tuttrup* of Appleton, and oral argument by *Homer H. Benton* and *Roger R. Tuttrup.*

The following opinion was filed November 9, 1932:

FRITZ, J. Upon this appeal from an order sustaining defendant's plea in abatement to an information charging him with manslaughter in the fourth degree, under sec. 340.26, Stats. 1929, the sole issue presented is whether or not the evidence introduced on the preliminary examination established the commission of the crime charged and a reasonable

probability of the commission thereof by the defendant. As to that issue the defendant contends that that evidence was insufficient to establish the commission by the defendant of the crime charged. On the other hand, the state contends that the evidence was sufficient to enable the examining magistrate to determine that there is probable cause to believe that the accused is guilty of the crime charged; and that the function of a reviewing court, when the sufficiency of evidence taken on a preliminary examination is challenged as in this case, is only to examine the evidence to ascertain whether there was any substantial ground for the exercise of judgment by the committing magistrate. As this court said in *State ex rel. Durner v. Huegin,* 110 Wis. 189, 237, 85 N. W. 1046, the reviewing court—

"can examine the evidence only sufficiently to discover whether there was any substantial ground for the exercise of judgment by the committing magistrate. It cannot go beyond that and weigh the evidence. It can say whether the complaint will admit of a construction charging a criminal offense, or whether the evidence rendered the charge against the prisoner within reasonable probabilities. That is all. When it has discovered that there was competent evidence for the judicial mind of the examining magistrate to act upon in determining the existence of the essential facts, it has reached the limit of its jurisdiction on that point. If the examining magistrate acts without evidence, he exceeds his jurisdiction; but any act, upon evidence worthy of consideration in any aspect, is as well within his jurisdiction when he decides wrong as when he decides right."

That rule was followed in *Lundstrum v. State,* 140 Wis. 141, 144, 121 N. W. 883; *Vejih v. Redford,* 182 Wis. 311, 314, 196 N. W. 228, and affords the test to be applied to the evidence on this appeal.

Sec. 340.26, Stats., upon which the complaint and information herein are based, is as follows:

"Every other killing of a human being by the act, procurement or *gross* negligence of another, where such killing

is not justifiable or excusable, or is not declared in this chapter murder or manslaughter of some other degree, shall be deemed manslaughter in the fourth degree."

The word "gross," which is italicized in the foregoing quotation, was inserted in that provision in 1929 by a legislative enactment which substituted that word in lieu of the word "culpable" as the adjective that defined the word "negligence" as used in that statute. Prior to that amendment this court had held that under the term "culpable negligence" as used in that statute one can be held for manslaughter in the fourth degree even though the killing is involuntary and is due to inadvertence. *Clemens v. State,* 176 Wis. 289, 304, 185 N. W. 209; *Kleist v. Cohodas,* 195 Wis. 637, 643, 219 N. W. 366. In each of those cases that statute, in so far as it permitted of a conviction of manslaughter in the fourth degree, even though the killing was but involuntary and due to inadvertence, was severely criticized as attaching too arduous a consequence to acts and omissions of mere inadvertence, and a modification of the law by the legislature was deliberately proposed. It is interesting and significant to note that, as originally introduced, the legislative bill, which after amendment resulted in substituting in 1929 the term "gross negligence" for the term "culpable negligence" in sec. 340.26, Stats., read, as far as that section was concerned, as follows:.

"Section 1. Section 340.26 of the Statutes is amended to read: 340.26 Every other killing of a human being by the act, procurement or gross negligence of another, *except negligent homicide,* where such killing is not justifiable or excusable, or is not declared in this chapter murder or manslaughter of some other degree, shall be deemed manslaughter in the fourth degree."

As thus introduced the italicized words "except negligent homicide" were to be inserted in sec. 340.26 as an additional amendment thereof. And in sec. 2 of that legislative bill a

new offense, designated as "negligent homicide," was created and defined as follows:

"340.26 (1) Any person who, by the operation of any vehicle at an immoderate rate of speed or in a careless, reckless or negligent manner, but not wilfully or wantonly, cause the death of another, shall be deemed guilty of the crime of negligent homicide and upon conviction thereof shall be punished by a fine not exceeding one thousand dollars or by imprisonment in the state prison for not to exceed five years, or by both such fine and imprisonment."

It is apparent that the proposed newly named offense of negligent homicide, as thus defined, would have included and perhaps been solely applicable to all such instances of involuntary killing, which were due to inadvertence, as theretofore amounted to violations of sec. 340.26, Stats. However, all provisions, which were in relation to the proposed offense designated in that bill as negligent homicide, and which were intended to declare as criminal those instances of involuntary killing that were due to inadvertence, which upon the substitution of the term "gross negligence" for the term "culpable negligence" in sec. 340.26, Stats., were no longer to be included as violations of that section and were eliminated from that bill by the legislature. Nevertheless, however, the legislature then enacted the balance of the bill, which substituted the term "gross negligence" for the term "culpable negligence," and thereby excluded from the scope of that statute such involuntary killings by inadvertence as were theretofore within the provisions of that statute. The legislature thereby undoubtedly intended to confine the scope of that statute, so far as the term "negligence" is concerned, to killing by "gross negligence," which term, in 1929, and for a considerable period prior thereto, had a well established and well understood meaning in the law of this state. Thus in *Jorgenson v. Chicago & N. W. R. Co.* 153 Wis. 108, 140 N. W. 1088, this court said:

"Gross negligence has received a very certain and definite meaning in the jurisprudence of this state, somewhat differ-

ent from the meaning given to it in other states. It is not inadvertence in any degree."

In *Bentson v. Brown,* 191 Wis. 460, 211 N. W. 132, the court said:

"Ordinary negligence and gross negligence are not the same, and in our state do not grade into each other. The former lies in the field of inadvertence; the latter in the field of an actual or constructive intent to injure."

In *Astin v. Chicago, M. & St. P. R. Co.* 143 Wis. 477, 128 N. W. 265, gross negligence was said to be characterized by—

"an absence of any care on the part of a person having a duty to perform to avoid inflicting an injury to the personal or property rights of another, by recklessly or wantonly acting or failing to act to avoid doing such injury, evincing such an utter disregard of consequences as to suggest some degree of intent, to cause such injury."

In *Willard v. Chicago & N. W. R. Co.* 150 Wis. 234, 136 N. W. 646, it was said to be the settled law of this state that—

"in order to constitute gross negligence, there must be either a wilful intent to injure, or that reckless and wanton disregard of the rights and safety of another or his property, and that willingness to inflict injury, which the law deems equivalent to an intent to injure."

To the same effect see also *Lockwood v. Belle City St. R. Co.* 92 Wis. 97, 65 N. W. 866; *Schug v. Chicago, M. & St. P. R. Co.* 102 Wis. 515, 78 N. W. 1090; *Bolin v. Chicago, St. P., M. & O. R. Co.* 108 Wis. 333, 84 N. W. 446; *Watermolen v. Fox River E. R. & P. Co.* 110 Wis. 153, 85 N. W. 663; *Decker v. McSorley,* 116 Wis. 643, 93 N. W. 808; *Wilson v. Chippewa Valley E. R. Co.* 120 Wis. 636, 98 N. W. 536; *Rideout v. Winnebago Traction Co.* 123 Wis. 297, 101 N. W. 672; *Gould v. Merrill R. & L. Co.* 139 Wis. 433, 121 N. W. 161; *Haverlund v. Chicago, St. P., M. & O. R. Co.* 143 Wis. 415, 128 N. W. 273; *Barlow v. Foster,*

149 Wis. 613, 136 N. W. 822; *Kuchler v. Milwaukee E. R. & L. Co.* 157 Wis. 107, 146 N. W. 1133; *Herrem v. Konz,* 165 Wis. 574, 162 N. W. 654; *Moody v. Milwaukee E. R. & L. Co.* 173 Wis. 65, 180 N. W. 266; *Sharp v. Milwaukee E. R. & L. Co.* 176 Wis. 340, 187 N. W. 198; *Hafemann v. Seymer,* 191 Wis. 174, 210 N. W. 373; *Good v. Schiltz,* 195 Wis. 481, 218 N. W. 727; *Theby v. Wisconsin P. & L. Co.* 197 Wis. 601, 222 N. W. 826, 223 N. W. 791.

It follows that in order to convict under sec. 340.26, Stats., so far as the issue of gross negligence—if involved in the charge—is concerned, the evidence must be such as to warrant finding beyond a reasonable doubt that the misconduct of the accused, which resulted in the killing, was of more reprehensible character than mere inadvertence or want of ordinary care, in that there was on his part either a wilful intent to injure, or that reckless and wanton disregard of the rights and safety of another or his property which the law deems equivalent to an intent to injure. However, in the earlier stages of a criminal proceeding, as at the preliminary examination and the review of the committing magistrate's decision, the test is not whether guilt in those respects has been established beyond a reasonable doubt, but merely whether the evidence, worthy of consideration in any aspect for the judicial mind to act upon, rendered the charge against the prisoner within reasonable probabilities. Applying that test to the competent evidence in this matter, it was within the province of the examining magistrate to find that the existence of the essential facts to constitute gross negligence was established within reasonable probabilities. That evidence warranted the magistrate in finding the probable existence of the following facts and circumstances:

The killing of the four persons named in the information was the result of a collision between two automobiles, in which they were passengers, in about the center of a level,

right-angled intersection, which was formed by two highly traveled concrete highways, each of which was forty feet wide at that intersection. The collision occurred at noon-time, and there were no natural conditions which interfered with defendant's vision or the operation of an automobile. He approached and entered the intersection from the south at a speed of forty-five to fifty miles per hour, and the other automobile approached from the east at twenty-five to thirty miles per hour. The fact that there was an intersection of highways at that point was readily observable by a traveler approaching from the south for upwards of 700 feet because of the usual indications afforded by the conspicuous con-creted surface of an intersecting highway, and the location of a filling station at the southwest corner, and a store facing south at the northeast corner. However, even more obvious and striking to any traveler, who was approaching from the south and who was paying any attention whatsoever, and was not proceeding in utter indifference and disregard of all customary markings as to an intersection, were six conspicu-ous and unmistakable signs along that highway, to wit: at 700 feet a sign "Arterial for through traffic 700 feet;" at 300 feet one sign "Arterial for through traffic 300 feet" and another "Junction with 10;" at the south line of the inter-section a sign "Through—Stop—Highway," a sign "Through—Stop—Traffic," and the sign "Stop" in large letters on the concrete surface.

Notwithstanding all of those unequivocal indications, the defendant never reduced the high rate of speed at which he approached the intersection, and never altered his course un-til, when he was about five feet from the point of the impact, he swerved a trifle to the west. That impact occurred in the north half of the intersection and about five feet to the west of the center line thereof. Manifestly, the car with which he there collided had then partly cleared the twenty feet wide,

east half of the intersection available for the north-bound traffic. That car had entered upon that east half of the intersection to the extent of at least five feet when the defendant was still seventy-five feet south of the center of the intersection, or fifty-five feet south of the south line thereof, and unless the driver of that car was otherwise proceeding unlawfully he had the right of way. At all events, when the defendant was still at least seventy-five feet south of the point of the collision, the presence of the other car within the intersection and its probable course and rate of speed were readily observable by the defendant. In fact, under the existing physical conditions, that car, while it was still a substantial distance east of where it entered the intersection, was readily observable by a driver approaching from the south for a substantial distance before he reached the point seventy-five feet south of the center of the intersection, although it is true that at the southeast corner a house, which was forty-nine feet south and sixty-two feet east from the centers of the respective intersecting highways, and which was surrounded by some trees, obstructed the view eastward for any considerable distance. However, notwithstanding those opportunities for timely observation and discovery of the approach and the presence in the intersection of the west-bound car, the defendant did not see it at all until he was within fifteen or twenty feet from it, and still proceeding toward it at the rate of forty-five to fifty miles per hour. His continued apparent indifference or flagrant disregard of all of the existing obvious means and opportunities, while he was voluntarily and intentionally operating an instrumentality, which when handled under such circumstances, in such a manner, is well known to be exceedingly dangerous, evinces a purpose to take known chances of perpetrating an injury, to such an extent as to constitute the equivalent, so far as turpitude and consequences are concerned, of actual intent

and willingness to perpetrate injury, and thus affords ample basis for finding the existence of the essential elements in that respect of gross negligence.

. In addition to the facts and circumstances hereinbefore stated, which were established by proof, the relevancy and competency of which were not challenged, there was evidence introduced on the preliminary examination of admissions by the defendant that, shortly before arriving at the place of the accident, one of his companions had told him not to stop at arterials; that they were in a hurry; that he didn't figure on stopping, he just figured on slacking up and going through; that he didn't see the arterial highway sign until he was opposite the sign; and that up to that time he had not seen the car coming, and it was too late to stop when he had seen the sign; that he figured on going through; and that he then saw the car and slacked up. That evidence convincingly confirms the existence of intent and willingness on the part of the defendant to recklessly and wantonly proceed regardless of the rights and safety of others on the highways. If that evidence was admissible it afforded competent proof in further support of the committing magistrate's decision. However, he undoubtedly disregarded that evidence in view of his ruling to strike it from the record on the defendant's objection and motion that it did not appear that the defendant had been informed as to his constitutional rights at the time the statements were made by him in answer to questions put to him in the office of the district attorney.

In that respect the meager showing in the present record is merely to the following effect: At the scene of the accident a county traffic officer gave the defendant a summons to appear in court at two o'clock that afternoon; that later the district attorney told the officer to have the defendant come to the district attorney's office; that that officer, a motorcycle officer, the defendant and the district attorney met in the lat-

ter's office, and the statements were then made by the defendant; and that when, on the preliminary examination, one of the officers was asked, in relation to those statements, "Were they voluntarily made; made without asking him questions?" he answered, "Well, they asked him questions; that is about the only way you could get anything about the accident." The defendant did not take the stand at all at the preliminary examination, and he did not offer any proof whatsoever as to the circumstances under which he made those statements in the district attorney's office. It does not appear that he was under arrest, or even under oath at that time, or that those statements were elicited by any coercion, threats, or artifice. On the contrary, there is nothing to show that they were not made freely and voluntarily, without any persuasion, or any promise, or influence of hope or fear. Consequently, as far as was then disclosed by the record, the evidence as to those statements was admissible even though the defendant had not been informed by the district attorney or the officers as to his constitutional rights. *Hintz v. State,* 125 Wis. 405, 408, 104 N. W. 110; *Tarasinski v. State,* 146 Wis. 508, 513, 131 N. W. 889; *State v. Smith,* 201 Wis. 8, 10, 229 N. W. 51. It follows that the circuit court's order must be reversed.

*By the Court.*—Order reversed, and the cause remanded to the circuit court for further proceedings herein against the defendant according to the law.

A motion for a rehearing was denied, without costs, on January 10, 1933.