OLESTON, Plaintiff in error, vs. SCHOULTZ, Sheriff, Defendant in error.

*January 11—February 5, 1935.*

For the plaintiff in error there was a brief by *Grady, Farnsworth & Walker* of Portage, and oral argument by *Walter H. Farnsworth.*

For the defendant in error there was a brief by the *Attorney General, J. E. Messerschmidt,* assistant attorney general, *Earl F. Kileen,* district attorney of Waushara county, and *R. B. Graves,* assistant district attorney, and oral argument by *Mr. Graves, Mr. Buchanan Johnson,* district attorney of Waushara county, and *Mr. Messerschmidt.*

MARTIN, J.   The plaintiff in error (defendant) claims that his confinement and the restraint of his liberty are illegal; that such illegality consists in lack of jurisdiction on the part of the justice of the peace to hold and commit petitioner to answer in the circuit court for Waushara county to the charges specified or for any other criminal offense, for the reason that, upon said preliminary hearing or examination before said magistrate, no evidence was adduced, offered, or received showing any criminal offense to have been com-

mitted by petitioner, or probable cause to believe him guilty of the commission of any such offense.

The state contends that the evidence was sufficient to enable the examining magistrate to determine that there was probable cause to believe that the accused is guilty of the crimes charged. The material portion of sec. 221.17, Stats., provides:

"Any banker, officer . . . or employee of any bank who shall wilfully and knowingly subscribe to or make, or cause to be made, any false statement or false entry in the books of any bank, . . . with intent to deceive any person or persons authorized to examine into the affairs of said bank, . . . shall be deemed guilty of a felony. . . ."

Our function as a reviewing court, when the sufficiency of the evidence taken on a preliminary examination is challenged, as in this case, is only to examine the evidence to ascertain whether there was any substantial ground for the exercise of judgment by the committing magistrate. *State ex rel. Durner v. Huegin,* 110 Wis. 189, 237, 85 N. W. 1046; *State v. Whatley,* 210 Wis. 157, 160, 245 N. W. 93.

Counts 1, 2, and 3 involve the Albert Oleston transaction and the entries made by the plaintiff in error in connection therewith on February 23, 1933, upon the bank journals. The alleged violations are:

"Entry February 23, 1933, of purchase of one $1,000.00 Shawinigan Water & Power Company bond at a false cost of $950.00 instead of at the true cost of $559.00.

"Entry February 23, 1933, of the purchase price of one $1,000.00 Florida Power & Light Company bond at a false cost of $950.00 instead of at the true cost of $616.39.

"Entry of $724.61, the difference between the recorded price and the true price of the bonds referred to in counts 1 and 2 as a payment on loans and discounts."

Albert Oleston is a brother of the defendant. At the time in question he owed the bank $1,866, secured by his note and real-estate mortgage. It appears that the loan committee of

the bank, or at least some members of the committee, regarded the security inadequate. Albert Oleston had an opportunity to sell his farm for $1,100. It is claimed by defendant that he offered to do so and turn over the proceeds to the bank provided the bank would satisfy his total indebtedness on the note. Defendant claims that the loan committee of the bank in substance instructed him to accept Oleston's offer and purchase bonds with the $1,100, to be held in lieu of the note and mortgage. When the $1,100 was received, defendant claims it was put in the form of a cashier's check or certificate, and that he then placed an order for the Shawinigan and Florida bonds.

It appears that defendant purchased through the First Wisconsin Company of Milwaukee one $1,000 Shawinigan bond and one $1,000 Florida Power & Light Company bond. The purchase of the Shawinigan bond is evidenced by invoice dated February 21, 1933, the purchase-price being $545 for principal and $14 accrued interest to date of purchase, making the total cost of said bond to the bank $559. The Farmers Home Bank had a deposit account with the First Wisconsin National Bank, and said account was charged under date of February 23, 1933, with the invoice price of said bond.

The purchase of the Florida Power & Light Company bond is evidenced by invoice dated February 17, 1933, the purchase-price being $610 principal and accrued interest to date of purchase $6.39, in all $616.39. This item was also paid by a charge by the First Wisconsin National Bank against the Farmers Home Bank.

Thus the total purchase-price of both bonds was $1,175.39. Both items were combined and credited to the First Wisconsin National Bank at said sum. The proper *contra* entry would have been a debit to the bond account showing an exchange of cash for bonds. The debit to the bond account as entered was $950 for each bond, or a total of $1,900. This left the journal out of balance for the difference of

$724.61. This difference was covered by an arbitrary increase in the amount of credits on the same date to loans and discounts, which entry showed payments on loans and discounts held by the bank to the amount of $724.61 more than was actually paid. The two debits to the bond account were entered in the ledger at the same amount as shown in the journal, which entries were personally made by the defendant.

Defendant contends that the item of $724.61 must be considered as a part of the cost of the two bonds purchased because they were substituted or received in exchange for the mortgage investment, and, further, that the amount was a proper credit to loans and discounts because of the alleged agreement to satisfy Oleston's mortgage indebtedness in full. Defendant claims the transaction constituted and was treated as an exchange or switch of securities. It is rather difficult to follow this line of reasoning. It has more the appearance of an attempt to charge off what may have been considered a bad debt. The accountant, McMurry, who testified on behalf of the defendant at the preliminary examination, on his cross-examination stated, in part, as follows :

"I did not find out why they had the cost of these bonds on the Albert Oleston indebtedness $724.61 more than the bank paid for them. I do not know why that was done. There is nothing in the books to show why they took that exact figure. I didn't find out because I knew in a general way why banks do that. They did it because that amount equalled the amount Oleston was owing the bank. It was obviously an attempt to charge off what appeared to be a bad debt by some means other than a write off as a bad debt."

The testimony of Mr. Mabie, certified public accountant, who testified on behalf of the state at the preliminary examination, discloses that he made an examination of the bank records prior to the commencement of proceedings against the defendant. He testified with reference to the record of the purchase of the bonds in question, that at the

time of his investigation the only available source of information as to the amount paid for the bonds was the general journal of the bank, and that the invoices covering the items were not available. The witness says that he obtained information from defendant to the effect that the amount by which the cost of the bonds had been increased represented the amount charged off against the Albert Oleston indebtedness. Under the evidence, the transaction cannot be considered as an exchange of investments. Albert Oleston never had any interest in the bonds. They were not purchased for his account or in pursuance of any agreement with him. He was a stranger to the bond transaction. Oleston owed the bank $1,866. The expense in connection with the sale of the farm, which the bank paid, amounted to $105.72. The purchaser of the farm paid $1,100 and $5 additional was received from some other source which is unexplained. The bank netted on the settlement $999.28. If the entire debt was satisfied or if the balance was uncollectible, the bank's loss was $866.72. Of this amount, $724.61 was charged up as a part of the cost of the bonds, and the balance written off as worthless by a charge to profit and loss.

From a careful review of all the evidence relative to the Albert Oleston transaction which relates to the violations alleged in counts 1, 2, and 3 of the state's complaint, our function on this appeal being only to examine the evidence to ascertain whether there was any substantial ground for the exercise of judgment by the committing magistrate, we hold that there was sufficient evidence for the exercise of judgment by said magistrate as to the violations charged in said counts. Having reached this conclusion, we deem it unnecessary to make reference to the several offenses charged in the remaining counts of the complaint, for the reason that the order appealed from must be affirmed.

*By the Court.*—Order affirmed.